**Case No. 2024-1870**

# United States Court Of Appeals
# for the Federal Circuit

In re: XENCOR, INC.,
*Appellant*

Appeal from the United States Patent and Trademark Office
Patent Trial and Appeal Board Appeal No. 2022-001944

**BRIEF OF THE DANA-FARBER CANCER INSTITUTE AND MEMORIAL SLOAN-KETTERING CANCER CENTER AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT FOR *EN BANC* REHEARING**

RONALD E. CAHILL
BARNES & THORNBURG LLP
One Marina Park Drive
Boston MA 02210
Phone: (617) 316-5310
rcahill@btlaw.com

May 15, 2025

*Counsel for Amici Curiae*
(Continued on next page)

HILARY J. LIBKA
MEMORIAL SLOAN-KETTERING CANCER
CENTER,
MEMORIAL HOSPITAL FOR CANCER AND
ALLIED DISEASES, AND
SLOAN-KETTERING INSTITUTE FOR CANCER
RESEARCH
1275 York Avenue
New York, NY 10065
Phone: (646) 227-2100
LibkaH@mskcc.org

PETER A. SULLIVAN
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, New York 10019.
Phone: (212) 812-0310
psullivan@foleyhoag.com

STEVEN P. CALTRIDER
DANA-FARBER CANCER INSTITUTE,
INC.
450 Brookline Avenue
Boston, MA  02215
Phone: (617) 632-3605
StevenP_Caltrider@dfci.harvard.edu

KYLE WASDEN GRIMSHAW
DANA-FARBER CANCER INSTITUTE,
INC.
450 Brookline Avenue
Boston, MA  02215
Phone: (317) 525-6373
kyle_grimshaw@dfci.harvard.edu

ANSHUL MEHRA
DANA-FARBER CANCER INSTITUTE,
INC.
50 Brookline Avenue, D1618
Boston, MA  02215
Phone: (617) 632-3605
Anshul_Mehra@dfci.harvard.edu

WILLIAM R. BOUDREAUX
BARNES & THORNBURG LLP
24 Frank Lloyd Write Drive
Ann Arbor, MI 48105
Phone: (734) 489-8003
William.Boudreaux@btlaw.com

*Counsel for Amici Curiae*

# CERTIFICATE OF INTEREST

**Case Number** <u>2024-1870</u>

**Short Case Caption** <u>In re: Xencor, Inc.</u>

**Filing Party/Entity** <u>Dana-Farber Cancer Institute, et al.</u>

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: <u>05/15/2025</u>        Signature:  <u>/s/Ronald E. Cahill</u>
                  Name:    Ronald E. Cahill

1. **Represented Entities**.  Fed. Cir. R. 47.4(a)(1).  Provide the full names of all entities represented by the undersigned counsel in this case.

Dana-Farber Cancer Institute

Memorial Sloan-Kettering Cancer Center

2. **Real Party in Interest**.  Fed. Cir. R. 47.4(a)(2).  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

As used herein, the name Memorial Sloan-Kettering Cancer Center also includes:

Memorial Hospital for the Treatment of Cancer and Allied Diseases

Sloan-Kettering Institute for Cancer Research

Collectively, these three organizations are known as "MSK"

3.  **Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

4.  **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those wh have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

All counsel are entering appearances contemporaneously with the filing of this brief.

5.  **Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criterial under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☐ No    ☒ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

6.  **Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. I

TABLE OF CONTENTS ......................................................................... III

TABLE OF AUTHORITIES ................................................................. IV

INTEREST OF AMICUS CURIAE ......................................................... 1

INTRODUCTION ................................................................................ 1

ARGUMENT ........................................................................................ 3

   I.   The ARP Creates a New Rule And The Panel Decision Affirms the Result .. 3

   II.   The Panel Failed to Consider the Invention When Applying the Law of Written Description ................................................................................ 4

   III.   The Panel Decision Misconstrues Claim 8 and Misapplies the Law ........... 6

      A.   The Term "Anti-C5 Antibody" is Limited to Known Antibodies ............ 6

      B.   Limited to Known Anti-C5 Antibodies, The Specification Provides Sufficient Written Description ................................................................ 7

   IV.   The Panel Decision Overstepped Its Role and Created a New Rule Detrimental to Innovation ................................................................... 10

CONCLUSION ................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen, Inc. v. Sanofi*,
  872 F.3d 1367 (Fed. Cir. 2017) ...................................................7, 10

*Application of Aldrich*,
  398 F.2d 855 (C.C.P.A. 1968) ...........................................................6

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) ......................................................5, 7

*Phillips v. AWH Corp.*,
  415 F 3d 1303 (Fed. Cir. 2005) .........................................................4

*In re Rasmussen*,
  650 F.2d 1212, (C.C.P.A. 1981) .....................................................8, 9

*Rowe v. Dror*,
  112 F.3d 473 (Fed. Cir. 1997) ...........................................................7

*Application of Smythe*,
  480 F.2d 1376, 1383 (C.C.P.A. 1973) ................................................9

*In re Wands*,
  858 F.2d 731 (Fed. Cir. 1988) ...........................................................5

*In re Xencor, Inc.*,
  130 F.4th 1350 (Fed. Cir. 2025) .....................................................4, 5

**Other Authorities**

37 C.F.R. § 1.75(e) ............................................................................3, 6

Fed. Cir. R. 40(i)(1) ..............................................................................1

35 U.S.C. § 112 .....................................................................................1

## INTEREST OF AMICUS CURIAE

The Dana-Farber Cancer Institute (DFCI)[1] and Memorial Sloan-Kettering Cancer Center (MSK)[2] (collectively, "Amici") respectfully submit this brief *amicus curiae* in support of appellant's petition for rehearing. These institutions are committed to cancer research. Intellectual property rights are foundational to their missions of developing cancer treatments.

Amici submit this brief to persuade the Court to clarify proper application of Section 112 to the commonly used preamble "treating a patient" in analogous method claims and to the known preamble of a Jepson claim. Amici have no stake in the result of this appeal. The parties have not contributed to the preparation of this brief. No person has contributed money to fund preparing or submitting this brief.

## INTRODUCTION

This case presents two important issues that substantially impact thousands of life science patents. The ARP found that the preamble "treating a patient" must be supported by a written description of "treating all patients and all diseases." Requiring a written description of "all patients and all diseases" is not warranted by precedent and sets an impossibly high standard. Practically and intentionally, the

---

[1] *See*, www.dana-farber.org.
[2] *See*, www.mskcc.org.

ARP creates a new rule: a general reference to "treating" in the claims requires defining a specific disease state in the claim.

The Xencor application is directed to improved compositions and the claims are directed to methods of treating patients using these compositions. Such claims are commonly referenced as "analogous" method claims, as the claims typically stand or fall with the novelty/non-obviousness of the composition administered rather than the operable steps of the method. Consistent with an analogous method claim, Xencor's specification does not highlight anything significant or inventive in "treating" or "patient." Yet, the court found that the claim lacked written description support. Of course, it is impossible to describe "all patients and all diseases" for which a novel composition may be useful. As such, this case sets the precedent that only claims directed to a specific disease or condition are patentable, calling into question thousands of existing patents with analogous method claims. When an invention has little to do with the selection of the patient, this precedent unnecessarily limits applicant's invention. In this case, the invention claimed is a novel and inventive composition and its general use to treat patients—any patient. A claimed general use requires a general written description.

The case also presents important questions on construction of a Jepson claim preamble and the written description required to support a preamble claim element known in the art. In the Jepson claim format, elements in the preamble before the

2

operable words "wherein the improvement comprises" are conventional or known. The issue of construction is whether the Jepson preamble is therefore limited to what is conventional or known. 37 C.F.R. § 1.75(e). It is—it was error for the court to find otherwise. As a known element, it also follows that a skilled artisan would require less written description than the novel and inventive elements of claimed improvement. Patent applicants, who use Jepson claims for improvement inventions, need clarity on how such claims will be construed and what written description support is necessary for conventional or known claim elements.

## ARGUMENT

## I.  THE ARP CREATES A NEW RULE AND THE PANEL DECISION AFFIRMS THE RESULT

The ARP creates a new rule: a general reference to "treating" in the claims, regardless of what the invention is, requires defining a specific disease state in the claim. Appx17-18. The ARP stated this rule clearly:

> [I]t is preferable to require a claim to recite treatment of a specific disease or condition, such as "treating headache," . . . rather than claiming a treatment without limitation, unless "treating a patient" can be adequately supported for all patients and all diseases without limitation.

Appx18. The alternative, according to the ARP, is that patentees would deprive the public of new uses for known compounds because they would claim all treatments, including those treatments that they did not invent. *Id*. The panel did not acknowledge the new rule created by the ARP and accepted the ARP's determination

3

was supported by substantial evidence. *In re Xencor, Inc.*, 130 F.4th 1350, 1360 (Fed. Cir. 2025). However, the new rule is not only misplaced in its policy footing but led to an erroneous claim construction and written description analysis.

## II. THE PANEL FAILED TO CONSIDER THE INVENTION WHEN APPLYING THE LAW OF WRITTEN DESCRIPTION

The invention is directed to improved IgG antibodies, of which 5G1.1 (eculizumab) is one of many disclosed species, having increased half-life due to specified amino acid substitutions in the antibody's Fc region. The claims are analogous method claims directed to the use of the improved composition for treating patients. The word "treating" is not defined in the specification, but its meaning is informed by the operable step of "administering." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). The term "patient" is defined in the specification as a "humans and other animals." Appx174 at ¶183. The claim does not require a particular effectiveness or result. It also does not require the human/animal to suffer from a particular condition/disease. Yet, while the panel acknowledges that efficacy is not part of the claim, it nevertheless affirms the finding that the description is inadequate because it "does not describe what patients with what diseases or conditions can be successfully treated with an anti-C5 antibody" and fails to provide a working example. *In re Xencor,* 130 F.4th

at 1359-60. For the invention as *claimed*, adequate written description requires neither.

The patient—the human/animal receiving the drug—is "treated" upon administering the drug. Whether the human/animal has a disease or is healthy does not matter for the claimed invention. The claim would read on studies in normal animals, *e.g.*, for toxicology studies or for safety studies in healthy volunteers. The claimed invention is directed to *any* human/animal who is administered the improved antibody. The specification makes clear that the selection of the patient based on the disease or condition of the patient is unimportant to the claimed improvement.

The panel highlights the absence of a working example in finding that "[s]ubstantial evidence supports the ARP's determination" that the phrase "treating a patient" lacks written description. However, data or working examples are not required to describe an invention. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) ("the written description requirement does not demand either examples or an actual reduction to practice"). The presence or absence of a working example of treatment or data demonstrating usefulness are amongst the factors to determine enablement and utility, not written description. *See*, *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

The invention of claim 9 is administering 5.G1.1 antibody (the disclosed means) having the specified amino acid substitutions to the Fc region to increase half-life.  The specification (1) supports the invention with *in vivo* data, which are shown in Figures 14 and 15 for IgG antibodies generally, (2) notes that "[v]irtually any antigen may be targeted by the IgG variants," and (3) discloses 5G1.1 specifically as one such IgG antibody.  Nothing more is required for written description.  Appx152 at ¶ 126; Appx160 at ¶ 133.  Accordingly, the decision of the ARP finding a lack of written description should be reversed.

## III.  THE PANEL DECISION MISCONSTRUES CLAIM 8 AND MISAPPLIES THE LAW

In a Jepson claim structure, the preamble explicitly identifies the prior art and then, following the transition phrase "the improvement comprising," recites the improvement over the prior art.  37 C.F.R. § 1.75(e); *see*, *Application of Aldrich*, 398 F.2d 855, 857 (C.C.P.A. 1968).  Applicants choose to use the Jepson claim format, and in doing so, acknowledge that the claim elements in the preamble are known.  Accordingly, by using the Jepson claim format, the applicant is limiting the claim element to known "anti-C5 antibod[ies] with an Fc domain."

### A.    The Term "Anti-C5 Antibody" is Limited to Known Antibodies

The panel does not expressly construe "anti-C5 antibody" as the term is used in the preamble.  The ARP construed it as a functional term encompassing a "broad genus of antibodies."  Appx22.  However, this ignores the context of the Jepson

6

preamble.   The preamble of a Jepson claim defines the context of the claimed invention but *also limits its scope. Rowe v. Dror*, 112 F.3d 473, 479 (Fed. Cir. 1997). As such, claim 8 is limited to the *known* species of anti-C5 antibodies with an Fc region and their administration—*i.e.*, those antibodies and their administration methods known as of the filing date.

The specification describes one such antibody, "anti-complement (C5) antibodies such as 5G1.1" which is now called eculizumab.   Appx160 at ¶ 133. Amici take no position on whether only one such antibody was known or whether several such antibodies were also known.   Regardless, the number of known anti-C5 antibody with an Fc domain is a limited number of known members.   The term "anti-C5 antibody" in the context of the Jepson claim is not a functionally defined genus. Accordingly, the tests to establish possession of a functionally defined genus, structural-function relationship or common structural features as outlined in *Amgen*, simply do not apply to the present Jepson claim.   *Amgen, Inc. v. Sanofi*, 872 F.3d 1367, 1373 (Fed. Cir. 2017).   As a matter of law, the term is limited to known "anti-C5 antibod[ies] with an Fc region."

## B.    Limited to Known Anti-C5 Antibodies, The Specification Provides Sufficient Written Description

Written description is context specific: "[t]he level of detail required to satisfy the written description requirement varies depending on the *nature and scope of the claims* and on the complexity and predictability of the relevant technology." *Ariad*,

7

598 F.3d at 1351 (emphasis added).  In the present case, the panel failed to note the "nature and scope of the claims."  The scope of the Jepson preamble limitation claim is limited to known anti-C5 antibody.   The nature of the claim is that the new limitations following the "improvement comprising" are specific amino acid substitutions in the human Fc polypeptide that increase *in vivo* half-life.  It is settled law that limitations distinguishing an invention from the prior art or are otherwise critical require more written description support than less critical limitations.  *E.g.*, *In re Rasmussen*, 650 F.2d 1212, 1215 (C.C.P.A. 1981). In *Rasmussen*, the limitation of "adheringly applying" was supported by two sentences describing one method of adhering.  *Id*.  The court continued, "[s]imilarly, one skilled in the art who read Rasmussen's specification would understand that it is unimportant how the layers are adhered, so long as they are adhered."  *Id*.  Thus, in the context of a Jepson claim where the preamble limitation is known and therefore "unimportant" relative to the description of the claimed improvements, the preamble limitation requires less support than the differentiating elements of the claim.

A skilled artisan would understand the focus of the invention to be the amino acid substitutions in the Fc region of IgG antibodies that provide the *in vivo* half-life extension.  One of the many IgG antibodies disclosed is an anti-C5 antibody, 5G1.1.  Appx160 at ¶ 133.  The critical attribute of the antibody in the context of the *claimed improvement* is the Fc domain.  Other attributes of the antibody highlighted by the

ARP ("unrestricted in their variable region structure, epitopes to which they bind, function, mechanism of action in treatment, etc.") are of no moment in the context of the claimed invention. Appx22. The specification makes this clear.

This is akin to the issues presented in *Application of Smythe* where the alleged failure of the specification to describe possible inoperative embodiments within the term "inert fluids" was rejected. *Application of Smythe*, 480 F.2d 1376, 1383 (C.C.P.A. 1973). The court noted, "[w]e therefore cannot agree with the board that the rejection under the first paragraph of § 112 is any more sustainable because the broader term 'fluid' includes some 'liquids' which might not work." *Id*.

In the context of this *claimed invention*, treating a patient with anti-C5 antibody was known. Appx34. Like *Smythe* and *Rasmussen*, more detail about the known C5 antibody is "unimportant" to the claimed improvements. The specification supports the improvement on IgG antibodies generally, discloses and, properly construed, claims the known 5G1.1 antibody as one such IgG antibody. Describing all known anti-C5 antibodies is no more important to the invention disclosed than the alternative methods of adhering in *Rasmussen* or fluids and the analogy to the 1-pound weight in *Smythe*. *Smythe*, 480 at 1383-84 (offering an analogy to the disclosure of a 1-pound "lead weight" being sufficient written

description to support a "metal weight" or "weight").  Nothing more is required for

written description.[3]

## IV.    THE PANEL DECISION OVERSTEPPED ITS ROLE AND CREATED A NEW RULE DETRIMENTAL TO INNOVATION

The limitation in analogous method claims of "treating a patient" is

commonplace.  A cursory search identified nearly 50,000 patents having the term

"treating a patient" or the related phrase "treating a subject" that would now be called

into question.  Holding that an adequate written description for this limitation

requires a description of "all patients" and "all diseases" sets a high bar so high that

it is an impossibility.  No treatment is effective in "all patients" and "all diseases"

and few, if any, patents can describe "all patients" and "all diseases."  When the

specific identity of the patient bears little, if any, relation to the claimed invention, a

description of "all patients" or "all diseases" is not required.  Practically, the

implications of this case create a rule requiring any treatment claim to specify the

disease state.  The ARP overstepped in purposefully creating such rule.

Furthermore, the policy proffered by the ARP to justify its new rule is

misplaced.  Appx18 ("It would discourage invention of new uses for known

compounds if an applicant can obtain a broad claim for 'treating a patient,' *i.e.*, any

---

[3] If the construction proffered by Amici is incorrect and "anti-C5 antibody" instead means any antibody that binds to compliment C5, Amici take no position on whether the specification supports written description under the *Amgen* standard.

patient, having any disease or condition (for all uses of a compound)".  Analogous method claims do not stifle discovery of new uses but rather are necessary to protect the investment in the improved composition.  Given the impossibility of describing all uses—including those yet to be discovered—the improved composition in a claim limited to a specific disease could be readily copied and exploited by anyone putting the composition to a new use.  The inevitable consequence is that applicants will introduce long lists of possible uses in the patent application to predict such future uses and preempt such exploitation.  The better policy is to allow applicants to claim what is invented in an analogous method claim—a general use of a new and inventive compound—and to describe such general use with a general description.  Such a claim is commensurate in scope to the contribution to the public and leaves new uses for future innovation.

This court needs to review this case more critically *en banc* and in doing so should reverse the ARP and remand the case for further review.

## CONCLUSION

Accordingly, for the reasons outlined herein, Amici support *en banc* review.

Dated: May 15, 2025

Respectfully Submitted by:

/s/Ronald E. Cahill
RONALD E. CAHILL
BARNES & THORNBURG LLP
One Marina Park Drive, Ste. 1530
Boston, MA 02210
(617) 316-5310

HILARY J. LIBKA
MEMORIAL SLOAN-KETTERING CANCER
CENTER,
MEMORIAL HOSPITAL FOR CANCER AND
ALLIED DISEASES, AND
SLOAN-KETTERING INSTITUTE FOR CANCER
RESEARCH
1275 York Avenue
New York, NY 10065
Phone: (646) 227-2100
LibkaH@mskcc.org

PETER A. SULLIVAN
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, New York 10019.
Phone: (212) 812-0310
psullivan@foleyhoag.com

STEVEN P. CALTRIDER
DANA-FARBER CANCER INSTITUTE,
INC.
450 Brookline Avenue
Boston, MA  02215
Phone: (617) 632-3605
StevenP_Caltrider@dfci.harvard.edu

KYLE WASDEN GRIMSHAW
DANA-FARBER CANCER INSTITUTE,
INC.
450 Brookline Avenue
Boston, MA  02215
Phone: (317) 525-6373
kyle_grimshaw@dfci.harvard.edu

ANSHUL MEHRA
DANA-FARBER CANCER INSTITUTE,
INC.
50 Brookline Avenue, D1618
Boston, MA  02215
Phone: (617) 632-3605
Anshul_Mehra@dfci.harvard.edu

WILLIAM R. BOUDREAUX
BARNES & THORNBURG LLP
24 Frank Lloyd Write Drive
Ann Arbor, MI 48105
Phone: (734) 489-8003
William.Boudreaux@btlaw.com

*Counsel for Amici Curiae*

## **CERTIFICATE OF SERVICE**

I certify that counsel of record have been served with a true and correct copy

of the foregoing document via the Court's CM/ECF system on May 15, 2025.


Date: May 15, 2025

/s/ Ronald E. Cahill
Ronald E. Cahill
BARNES & THORNBURG LLP
*Counsel for Amici*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume and typeface limitations of the Federal Rules of Appellate Procedure and the Federal Circuit Rules because this brief contains <u>2526</u> words and has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

Date: May 15, 2025

/s/ Ronald E. Cahill
Ronald E. Cahill
BARNES & THORNBURG LLP
*Counsel for Amici*

1